**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Ronald Joseph COVELLO and Michael Thomas Karalis, Defendants-Appellees.**

**No. 81–1050.**

United States Court of Appeals, Seventh Circuit.

Argued May 14, 1981.

Decided Aug. 19, 1981.

---

Thomas A. Durkin, Robert B. Breisblatt, Asst. U.S. Attys., Chicago, Ill., for plaintiff-appellant.

* The Honorable Philip Nichols, Jr., Associate Judge of the United States Court of Claims, is sitting by designation.

Mark W. Solock, Glenn E. Gutsche, Chicago, Ill., for defendants-appellees.

Before SPRECHER, Circuit Judge, NICHOLS,* Associate Judge, and CUDAHY, Circuit Judge.

NICHOLS, Associate Judge.

This case is before the court on appeal by the United States of a pretrial order of District Judge Marshall suppressing evidence. The issue presented is whether the defendant/appellee, Michael Thomas Karalis, consented to a search of luggage contained in his automobile, by consenting to a search of the car itself. Because we find the district court applied an incorrect legal standard, we vacate the suppression order and remand the case.

On March 21, 1979, the Chicago office of the Federal Bureau of Investigation (FBI) was notified that a four-door salmon colored Cadillac sedan with Illinois license plate No. TX 1684 had been involved in a jewelry theft in Grand Rapids, Michigan. A description of the alleged perpetrators of the theft was provided. The FBI determined that the automobile in question was registered to Adele Karalis, 2704 N. 74th Court, Elmwood Park, Illinois. The description of one of the perpetrators matched that of Karalis, who was known to the FBI as a thief and burglar.

The FBI began surveillance of the Elmwood Park address on March 21, and on March 22, FBI agents Benesh, Dolan, and Miller were present. At about 8:00 a.m., the automobile in question entered the garage behind the Karalis residence. Agents Dolan and Benesh thereupon converged upon the garage. As Karalis exited the car, he activated the trunk switch. Dolan observed two closed pieces of luggage. Dolan met Karalis at the rear of Karalis' car and Karalis closed the trunk. In response to Dolan's request that he and Benesh speak to Karalis about the jewel theft, Karalis agreed and entered Dolan's car.

The agents questioned Karalis and he responded that neither his car nor his license plates had been stolen recently. The agents informed Karalis of the Grand Rapids robbery, and asked if they could search the car. Karalis told them to get a warrant. After Benesh said he would present the information to the United States Attorney, Karalis asked if he could think about the search request. Karalis then left Dolan's car and entered his home.

There is a dispute in testimony over what next occurred. The agents testified that when Karalis returned, Miller said, "[y]ou're going to let these guys search your car, aren't you?" Karalis allegedly responded, "[s]ure." The agents further testified that Karalis cooperated so he would not be returned to Michigan for trial, where his conviction would result in a life imprisonment sentence for being a habitual offender. Karalis, however, testified that the agents surrounded him in a corner of the garage and threatened to return him to Michigan. The district court found that it was conceded that Karalis "left the premises for the purpose of cooperating. The totality of the agents' testimony is that Karalis voluntarily consented to the search of the car." *United States v. Covello and Karalis*, No. 80 CR 84, Memorandum Order 6 (N.D.Ill. Dec. 16, 1980).

Before the agents opened the trunk, Karalis signed a printed consent form which reads in material part:

I, Michael T. Karalis, having been informed of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize John R. Benesh, Robert J. Miller, and John T. Dolan, Special Agents of the Federal Bureau of Investigation, United States Department of Justice, to conduct a complete search of my automobile * located at garage behind residence, 2704 N. 74th Ct., Elmwood Park, Ill. These agents are authorized by me to take from my prem-

ises any letters, papers, materials or other property which they may desire.

_____

* Automobile described as a 1978, 4-dr. copper-colored, Cadillac, bearing Ill. (1979) lic. No. TX 1684.

This written permission is being given by me to the above-named Special Agents voluntarily and without threats or promises of any kind.

When the trunk was opened, there were three pieces of luggage. Two were similar to an attache case in size and the third was smaller and located below the other two. One of the attache-sized pieces bore a combination lock which the agents testified Karalis voluntarily opened. However, the FBI statement prepared by Dolan and Benesh stated that "Karalis made a point of providing the combination to the interviewing agents so that the case would not be destroyed." At any rate, the three pieces were all opened. The piece with the combination lock contained burglary equipment; the other attache-sized case contained personal effects and some jewelry; and the third case, which appeared to be a jewelry display case, contained a substantial quantity of jewelry.

Karalis and defendant/appellee Ronald Joseph Covello were charged in a two count indictment with violations of 18 U.S.C. §§ 2314, 2315 relating to the interstate transportation and receipt of stolen property. Karalis filed a motion to suppress the fruits of a warrantless search on February 29, 1980. After holding a hearing, the district court, on April 3, 1980, ordered the suppression of the contents of the luggage found in Karalis' trunk. On April 4, 1980, the government filed a Motion to Reconsider and for Leave to Reopen its Evidence. On June 27, 1980, the motion was granted, and on December 16, 1980, the district court entered a Memorandum Order suppressing the contents of the luggage. The government appeals that order pursuant to 18 U.S.C. § 3731, relating to interlocutory appeals in criminal cases.

The district court found "[t]he evidence is that Karalis orally and then in writing consented to a search of the automobile."

*United States v. Covello, supra* at 9. However, relying on *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) and *United States v. Dichiarinte,* 445 F.2d 126 (7th Cir. 1971), the district court held that because the government failed to show Karalis further expressly consented to the search of the luggage, the evidence was obtained in violation of the fourth amendment. The government argues that the district court misapplied *Sanders,* and that by analyzing "the totality of the circumstances." Karalis' consent to the car search likewise embraced the luggage.

In *Arkansas v. Sanders, supra,* police were informed that an individual would arrive on a flight carrying a green suitcase containing marihuana. Police observed the individual retrieve the suitcase from the airline luggage area. After the suitcase was placed in the trunk of a taxi, the suspect entered the taxi and it departed. The police stopped the taxi, and the taxi driver opened the trunk at the request of the police. The police discovered the green suitcase, opened it, and found marihuana. The Supreme Court held that the fourth amendment warrant requirement applied to the suitcase. Although the automobile had been properly stopped and searched under *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), there were no such exigent circumstances justifying the search of the luggage without a warrant.

■ The district court, however, misread *Sanders* as stating the search of the taxi was lawful because of exigent circumstances and the consent of the driver, but that the consent did not extend to the green suitcase. The district court went on to read *Sanders* as requiring additional express consent be given to validate a search of luggage found in an automobile trunk. *United States v. Covello, supra* at 10–11. Our analysis above, however, shows that *Sanders* did not even touch upon consent. There was no consent to construe. *Sanders* instead holds that once an automobile is properly stopped without a warrant because of exigent circumstances, there are no longer any exigent circumstances that justify the search of luggage found in the car without a warrant. *Sanders* would be relevant to the case at bar only if police had stopped and searched Karalis' car because of exigent circumstances and then opened the luggage without either a warrant or consent.

The proper test for examining the validity of the evidence in question requires an examination of the totality of the circumstances to construe the extent of the consent. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Sanchez-Jaramillo,* 637 F.2d 1094, 1098 (7th Cir. 1980). On the record before us, it appears the district court's suppression order cannot stand. Interpretation of the signed consent form is crucial to the case. The form authorized the agents "to conduct a *complete* search" of the car. (Emphasis supplied.) The district court would read "complete" to mean "incomplete." Furthermore, those agents were authorized "to take from [the] premises any letters, papers, materials, or other property which they may desire." In the absence of the word "complete," one possibly might construe the consent in a limited fashion, however, the addition of the word "complete" indicates that consent was extended to everything within the automobile. Such a construction is further supported by the permission given to the agents to remove items from the automobile. "Letters" and "papers" would not be expected to be lying around loose. They would be contained in something.

Additionally, an analysis of the totality of the circumstances prior to Karalis' consent tends to show that Karalis knew that the police had immobilized his vehicle and had evidence linking both himself and his vehicle to the robbery. The fact that if convicted in Michigan he could have been sentenced to life imprisonment as a habitual offender conceivably would have persuaded him to cooperate—especially since it would have been an easy matter for the police to obtain a warrant. If the motivating impulse in Karalis' cooperation was a desire to cooperate so he would not be sent back to Michigan for trial, it would be unreasonable

to assume that Karalis only consented to a search of the trunk and not to the luggage therein. Naturally the warrant would have covered both. Such a limitation on his consent would frustrate the purpose of consenting at all.

The defendants, however, urge that this case is similar to *United States v. Dichiarinte, supra,* and also argue that the government is attempting to use this appeal to obtain a *de novo* factual review. We disagree. In *United States v. Dichiarinte,* the defendant there consented to a search of his residence for narcotics. The agents, however, began removing personal records, and the defendant announced the search was over. The agents ignored the defendant and seized various papers. In suppressing that evidence, this court stated that the agents had exceeded the scope of the consent. In the instant case, because the district court had misread *Sanders,* it did not examine the scope of the consent. Upon the facts found by the district court, it is clear that Karalis never expressly revoked his consent, and the signed form indicates his initial consent was not narrow, unlike *Dichiarinte* where the consent was limited to a search for narcotics.

■ If the interpretation of the consent form were at issue in contract or property litigation, the language would be conclusive. There would hardly remain any issue for fact finding to resolve. We assume, however, at least arguendo, that in a criminal law search and seizure context, a party consenting in writing to a search may be more free to impeach the document he adopted by his signature, which we may call a contract of adhesion. We thus assume it is still necessary to draw factual conclusions from the totality of the circumstances, even though the difficulty confronting appellee in explaining away his own signature is still formidable. We are not fact finders, and therefore we cannot now determine that the motion to suppress should have been denied and the evidence admitted. *United States v. Matlock,* 415 U.S. 164, 177, 94 S.Ct. 988, 996, 39 L.Ed.2d 242 (1974). We hold that the district court in ruling on the mo-

tion to suppress, did not apply the proper test. It appears there is evidence—the document itself—that Karalis did consent to the search of the contents of the automobile including the luggage. However, because the district court read *Sanders* to require separate explicit consent for the luggage, it may not have fully found and examined all the facts concerning the circumstances under which Karalis consented to the search.

Therefore, the suppression order is vacated. The case is remanded to the district court which will conduct further fact inquiry if necessary, and will then reconsider all the evidence in light of the proper construction of the written consent as articulated in this opinion.

REVERSED and REMANDED.