**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charlie Clarence KING, Defendant–Appellant.**

**No. 87–8747**
**Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

April 15, 1988.

---

Paul S. Kish, Federal Defender Program, Inc., Atlanta, Ga. (Court-appointed), for defendant-appellant.

Mary Jane Stewart, Dept. of Justice, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before KRAVITCH, JOHNSON and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

In this appeal in a criminal case, we affirm the district court's ruling that a law enforcement officer had reasonable articulable suspicion sufficient to justify a pat-down search.

## FACTS

On April 1, 1987, a man robbed a branch office of the First Atlanta Bank. The robber gave a bank teller a note which demanded that money be placed in a bag. The teller complied with the request, but also placed a red dye pack into the bag. The note indicated that the robber was armed.

On April 18, 1987, at approximately 3:20 a.m., Officer R.K. Morton of the Dekalb County Police Department received a call to investigate unknown trouble at the Marcus Lounge in Decatur, Georgia. Upon arrival, Officer Morton spoke with Officer P.Y. Johnson, an off-duty police officer who worked at the lounge as a security guard. Johnson told Officer Morton that Charlie Clarence King, the appellant, had passed several red-stained $5 bills to the bartender. Although Morton was not aware of the April 1st robbery, he knew that bank tellers frequently insert red dye bombs in packages during bank robberies. He also knew that bank robbers are usually armed. Upon approaching King, Morton identified himself as a police officer, and because of the noise level in the lounge, asked to speak to King outside the lounge. King was totally cooperative and voluntarily went outside the lounge.

Once outside, Officer Morton questioned King concerning the source of the stained money. King responded that he had won the money in a gambling game in south Georgia. Because the weather was cool, in the low 50's, Officer Morton asked King to sit in the patrol car for further questioning. Officer Morton told King that he wanted to pat him down for weapons before entering the patrol car. King consented. During the pat-down search, Officer Morton discovered a large hard object about the size of a man's fist in King's left sock. Officer Morton thought it was an ankle holster containing a weapon. The object was actually $251 stained with red dye. During the pat-down search, Officer Morton also discovered a pipe in King's pocket. These events resulted in King being charged for the robbery of the First Atlanta Bank branch office.

## PROCEDURAL HISTORY

Following an evidentiary hearing on King's motion to suppress, King objected to the magistrate's report which recommended that the motion be denied. The district court adopted the magistrate's find-

ings and denied the motion to suppress. Subsequently, a jury convicted King of armed robbery, and the district court sentenced King to twenty years incarceration, to pay a special assessment of $50, and to make restitution in the amount of $2,220. At trial, three bank tellers from the First Atlanta Bank branch office positively identified King as the bank robber. The government also introduced testimony from a convenience store operator who positively identified King as the person passing red-stained bills at the convenience store after April 1, 1987.

## CONTENTIONS

On appeal, King contends that the district court erred by allowing the government to introduce into evidence the dye-stained money Officer Morton seized during the pat-down search. King argues that a pat-down search can be justified only if a law enforcement officer has specific articulable facts supporting an inference that a suspect is armed and dangerous.

The government contends that Officer Morton was justified in conducting a pat-down search for weapons in order to ensure safety.

The sole issue presented is whether the district court erred in denying King's motion to suppress the money seized during the pat-down search.

## DISCUSSION

It is well settled that fourth amendment protection does not apply to all police-citizen encounters. *United States v. Espinosa–Guerra,* 805 F.2d 1502 (11th Cir.1986). Indeed, "[a] police officer may approach an individual in a public place, identify himself as a law enforcement officer, and, in a non-coercive manner, ask the individual a few questions...." *Espinosa–Guerra,* 805 F.2d at 1507 (citing *Florida v. Rodriguez,* 469 U.S. 1, 105 S.Ct. 308, 310, 83 L.Ed.2d 165 (1984)). Brief encounters are allowed when a law enforcement officer has reasonable articulable suspicion that criminal activity may be occurring. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1967); *Espinosa–Guerra,* 805 F.2d at 1506–07.

In *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1967), the Court noted:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Terry,* 392 U.S. at 30, 88 S.Ct. at 1884–85.

■ We agree with the district court that the circumstances in this case justified a pat-down search for weapons. Officer Morton had been advised that King had issued $30 in red dye-stained money. He knew that banks insert red dye devices in packages of money during bank robberies; he knew that bank robbers are usually armed. At the time of this encounter, Officer Morton had been employed at the DeKalb County Police Department for three and a half years and had received training in field investigations. Because of his training and experience, Officer Morton had reasonable grounds to believe criminal activity was occurring. *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884. Additionally, it would have been poor police work for Officer Morton to fail to determine the nature of the hard object before entering the patrol car. *See generally Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). In light of the circumstances, Morton's investigation of the matter through reasonable inquiries was justified. The brief initial detention of King did not rise to the level of an arrest. Because Morton's fear for his safety was not dispelled during the brief

314

encounter, a pat-down search was reasonable. *See United States v. Kapperman,* 764 F.2d 786, 790 n. 4, *reh'g denied,* 770 F.2d 1084 (11th Cir.1985).

King also argues that Officer Morton could have conducted brief questioning inside the lounge and that the officer's request that he enter the patrol car was merely a pretext for a search. King's argument is without merit. The record indicates that Officer Morton could not conduct questioning inside the lounge because of the noise level. Furthermore, King did not resist the invitation to go outside. Morton's request that King sit in the patrol car for further questioning was reasonable. It was a cool night outside with the temperature in the low 50's. Moreover, Morton's decision to conduct questioning outside the lounge was prudent in light of the potential harm to innocent bystanders. · Law enforcement officers may take reasonable action, based upon circumstances, to protect themselves during *Terry* encounters. *Kapperman,* 764 F.2d at 790 n. 4. Clearly, Officer Morton had reasonable justification to conduct a pat-down search of King inside or outside the lounge. *See generally United States v. Willis,* 759 F.2d 1486, *reh'g denied,* 765 F.2d 154 (11th Cir.1985).

Officer Morton exercised tempered judgment in conducting the investigation. As stated in *Terry,* "we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest." *Terry,* 392 U.S. at 24, 88 S.Ct. at 1881.

Accordingly, the decision of the district court is affirmed.

AFFIRMED.