[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-14312
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 26, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-20200-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RONEL CHRISPIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 26, 2006)**

Before ANDERSON, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

Ronel Chrispin appeals the district court's denial of his motion to suppress

evidence obtained during a weapons frisk prior to his arrest for being an illegal alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A) and for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  We affirm.

**I.**

After hearing testimony of Miami-Dade County Police Officer Lorente at the suppression hearing, the magistrate judge set forth the following facts in his written report and recommendation.  At approximately 10:30 P.M. on January 8, 2005, Officer Lorente was patrolling in his marked police cruiser when he observed Chrispin walk out of a dark alleyway into a poorly lit parking lot adjacent to several closed businesses.  Officer Lorente knew that there had been a lot of crimes ("smash and grab" burglaries) reported in the area where Chrispin was walking.  Officer Lorente pulled into the parking lot, stopped his cruiser about fifteen to twenty feet from Chrispin, and turned on the flashing lights on the cruiser's roof.  Officer Lorente then exited the cruiser and asked Chrispin "to please come to him."  Chrispin obliged.  The magistrate judge found that "[n]either the police car nor [the] officer blocked the defendant from leaving the area."

Officer Lorente did not ask for identification from Chrispin but did politely ask Chrispin several questions about what he was doing that night.  Chrispin told

Officer Lorente that he was coming from the 163rd Street Mall seven blocks away, although the alleyway did not provide direct access to the mall because of fences and other obstructions. Officer Lorente's questioning took "only a short while"; he did not touch Chrispin; and he did not remove his firearm from its holster. During the questioning, however, Chrispin became increasingly nervous, put his hands in his pockets several times (which Officer Lorente eventually asked him not to do), and paused to think before answering even the most simple questions. After observing Chrispin's uncomfortable demeanor, Officer Lorente asked Chrispin if he had any weapons or drugs and then asked if he could frisk Chrispin. Chrispin did not say anything but simply turned around and put his hands on Officer Lorente's cruiser.

Officer Lorente then frisked Chrispin. During the search, Officer Lorente felt what he thought to be a pocket knife in Chrispin's pocket. Upon retrieving the item, Officer Lorente discovered that it was a loaded .22 caliber Derringer-type handgun. Officer Lorente then arrested Chrispin.

The magistrate judge recommended that Chrispin's motion to suppress the evidence of the firearm be denied. The magistrate judge determined that "[i]n view of all the surrounding circumstances, a reasonable person would have believed he was free to leave during [Chrispin's] encounter with the police" and that "[t]he

encounter . . . did not constitute a seizure of [Chrispin]." The magistrate judge also determined that Chrispin had "consented to be frisked" and that even if he had not, Officer Lorente "had articulable suspicion that [Chrispin] may be dangerous" to justify the frisk because he was in a high crime area late in the evening, was seen emerging from a dark alleyway near closed businesses, and was nervous throughout Officer Lorente's questioning.

The district court adopted the magistrate judge's report and recommendation, thereby denying Chrispin's motion. Chrispin later entered a conditional guilty plea, reserving the right to appeal the denial of his motion. The court sentenced Chrispin to concurrent 37-month sentences for each offense.

## II.

"Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts de novo." United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000). We also construe the facts in the light most favorable to the prevailing party below—here, the government. See id.

Chrispin argues that Officer Lorente stopped him without reasonable suspicion in violation of his Fourth Amendment rights as interpreted in Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968). The government responds that Chrispin

4

voluntarily submitted to Officer Lorente's questioning and gave consent to allow Officer Lorente to search him. We agree with the government on both issues.

A.

"There are three broad categories of police-citizen encounters for purposes of our Fourth Amendment analysis: (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." United States v. Perez, No. 05-12404, __ F.3d __, 2006 WL 696507, at *4 (11th Cir. March 21, 2006) (citing United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989)). The district court in the present case found that the encounter between Officer Lorente and Chrispin was of the first type: a consensual encounter involving no coercion or detention. The Supreme Court has explained consensual encounters as follows:

> Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage— provided they do not induce cooperation by coercive means.

United States v. Drayton, 536 U.S. 194, 200–01, 122 S. Ct. 2105, 2110 (2002) (internal citations omitted). The critical inquiry is whether "a reasonable person

5

would feel free to terminate the encounter." Id. If so, "then he or she has not been seized," id., and there can be no Fourth Amendment violation.

We have stated that the following factors are relevant to determining whether a seizure has occurred:

> whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.

United States v. De La Rosa, 922 F.2d 675, 678 (11th Cir. 1991). In this case, all of the factors weigh in favor of our conclusion that the encounter between Officer Lorente and Chrispin was not a seizure to which the Fourth Amendment applies. Although Officer Lorente did pull his cruiser to within a fifteen to twenty feet of Chrispin in the parking lot, Chrispin's path was not blocked by the vehicle. Officer Lorente did not retain Chrispin's identification and questioned Chrispin only briefly. Officer Lorente was the only officer present, and he did not unholster his firearm. Officer Lorente did not touch Chrispin until after he asked if he could frisk Chrispin and Chrispin turned around and put his hands on the cruiser. Finally, Officer Lorente was polite throughout his interaction with Chrispin.

Chrispin does not dispute any of these fact-findings. Based on our own review of Officer Lorente's testimony, we find no clear error in any them.

6

Accordingly, we conclude that the encounter between Officer Lorente and Chrispin was consensual and that a reasonable person would have felt free to terminate it.

B.

"Searches conducted by means of consent are valid so long as the consent is voluntary." United States v. Kapperman, 764 F.2d 786, 793 (11th Cir. 1985). "In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989). The district court determined that Chrispin's consent was voluntary, and we may overturn that finding only if it is clearly erroneous. See Kapperman, 764 F.2d at 793. We decline to do so.

This Court has previously found a search consensual where no verbal consent was given, but the defendant's body language indicated his assent to the search. See United States v. Ramirez-Chilel, 289 F.3d 744, 752 (11th Cir. 2002) ("Although the officers did not receive any explicit verbal consent from Ramirez-Chilel to enter [the residence], the officers did receive some sort of implied consent to enter from Ramirez-Chilel's body language . . . ."). In the present case, although Chrispin did not express his verbal assent to be searched, his body language—turning away from Officer Lorente and placing his hands on the police cruiser as if preparing to be searched—gave implied consent. There is no

7

evidence that his decision to do so was not freely made or without constraint. Accordingly, we conclude that Chrispin voluntarily consented to be searched.

That conclusion does not end our inquiry because the extent of a consensual search must be confined to the scope of the consent given. United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989). The Supreme Court has made clear that "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S. Ct. 2130, 2137 (1993). That is exactly what happened in this case.

The scope of Chrispin's consent was to allow Officer Lorente to check him for weapons or drugs that were immediately apparent. Officer Lorente conducted a pat-down frisk of Chrispin to check for those items. During the search, Officer Lorente felt an object that he thought was a weapon, and he retrieved it. The object was, in fact, a weapon, although a more dangerous one than the officer initially thought. We conclude that in these circumstances, the extent of the search was consistent with the scope of the consent.

**AFFIRMED.**

8