66 So.3d 380 (2011)
STATE of Florida, Appellant/Cross-Appellee,
v.
K.N., a Child, Appellee/Cross-Appellant.
Nos. 5D09-4297, 5D09-4298, 5D09-4299, 5D09-4300, 5D09-4301, 5D09-4302, 5D09-4303, 5D09-4304 & 5D09-4305.
District Court of Appeal of Florida, Fifth District.
July 29, 2011.
*382 Pamela J. Bondi, Attorney General, Tallahassee, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, for Appellant/Cross-Appellee.
Michael H. LaFay of NeJame, LaFay, Jancha, Ahmed, Barker & Joshi, P.A., Orlando, for Appellee/Cross-Appellant.
COHEN, J.
The State and Appellee, K.N., both challenge the trial court's ruling partially granting and denying Appellee's motion to suppress, which affected nine delinquency cases involving numerous counts of burglary of a conveyance, grand theft, petit theft, possession of burglary tools, and loitering and prowling. We reverse the trial court's order suppressing evidence, affirm to the extent it denied the motion to suppress, and remand for trial.
The facts are undisputed. Around 2:00 a.m. on a Monday morning, the Orange County Sheriff's Office received a 911 call from an identified resident of Courtleigh Drive. The resident reported a suspicious incident involving a white Toyota and its passenger: a tall, white male with long hair and a thin build running from house to house, peering into vehicles and checking door handles. This behavior was consistent with an increased number of burglaries involving unlocked vehicles in the Dr. Phillips area; handguns were stolen from some of the vehicles. The Orange County Sheriff's Office formed a specialty unit to combat the increased vehicle burglaries. Officer Adams was assigned to this task force and responded quickly to the resident's report.
As Adams came around a bend on Courtleigh Drive, he spotted a white Toyota stopped in the road, facing him. Adams' spotlight allowed him to observe two males in the car; the passenger met the resident's description. Upon activating the spotlight, the Toyota began to move towards the patrol car and the neighborhood's exit. Adams decided to investigate and activated his overhead lights. Because he was aware that handguns had been stolen in the rash of vehicle burglaries and, in his experience, burglars often carry weapons for defense, he decided to execute a high-risk traffic stop while awaiting backup units. After the vehicle stopped, Adams exited his patrol vehicle with gun drawn and waited for backup.
Once backup arrived, Adams asked Appellee to exit the vehicle first. Adams handcuffed him, patted him down for weapons, and secured him in the patrol car. He executed the same procedure with the driver, later identified as Appellee's cousin. As Appellee exited the car, Adams swept the car's interior with his flashlight and noticed, in plain view, a flashlight and small multi-tool on the front passenger seat and an iPod on the rear seat. Adams often saw multi-tools used in the commission of burglaries. After securing the pair, Adams returned to the car to perform a protective sweep of the trunk to make sure no one was hiding there.[1]
Adams performed the protective sweep based on prior experience when he encountered someone hiding in a trunk. As he shone his flashlight inside the trunk, he saw a Dell Latitude 610 laptop like the one he personally used. Based on his years of experience with the Sheriff's Office, he believed this model was used exclusively by law enforcement. Adams then returned to the patrol car, advised Appellee *383 and his cousin of their Miranda[2] rights, and gave them an opportunity to identify themselves and provide an explanation for their presence and conduct.
Appellee and his cousin explained that they were just driving around the neighborhood, enjoying the last day of spring break before school started the next morningabout four hours later. Neither knew anyone in the neighborhood. Although Appellee denied exiting the vehicle, his cousin contradicted him, stating that Appellee had done so several times to look at a boat. When asked about the multi-tool and flashlight in the front seat, Appellee answered that he was just holding the tool because it was in the car. Adams' concern was not dispelled. He concluded that the resident's report of suspicious activity and matching description of the car and passenger, the contradiction about whether Appellee exited the car, and the unlikely story that they were looking at someone's boat at 2:00 a.m., gave him probable cause to arrest Appellee for loitering and prowling and possession of burglary tools. Appellee was subsequently arrested and so charged.
Officer Adams proceeded according to the then-prevailing interpretation of New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), which held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." (Footnotes omitted.) When he turned on the laptop, the warning screen popped up indicating it was the property of the Orange County Sheriff's Office. Before having the vehicle towed for safekeeping, an inventory of the vehicle was conducted and several items collected. Appellee and his cousin were transported to the West Orange substation for questioning where Detective Thompson and Deputy Shellenberger took over the investigation.
Deputy Shellenberger testified that he advised Appellee of his Miranda rights and obtained his statement admitting other vehicle burglaries, stolen property from which was at his residence. After the deputy explained that the owners of the property would probably like to recover the items and asked if they could do that, Appellee signed a consent form and took the deputy to his house. The deputy only searched Appellee's bedroom and found a handgun in a black case between Appellee's bed and the wall exactly where Appellee described it would be. There were various electronics scattered all over the room.
At the suppression hearing, Appellee's argument was three-pronged: there was no probable cause to arrest him for loitering and prowling and any statements he made while in custody should be suppressed; the search of the car was illegal under Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009); and any confession or consent to search subsequent to his unlawful detention and arrest should be suppressed as "fruit of the poisonous tree." The State countered that Appellee, as a passenger, lacked standing to challenge the seizure of evidence from the vehicle under Gant or any other theory. In the alternative, the State argued the good faith exception to the exclusionary rule applied to any evidence seized because the police acted in accordance with Belton, the prevailing law at the time, and noted that Gant was decided a few weeks after the seizure. Further, even if Gant applied, the State argued the search was lawful under the second prong of Gant, which authorizes a search of the *384 passenger compartment when it is reasonable to believe the vehicle contains evidence of the offense of arrestin this case, possession of burglary tools.
The trial court found that Officer Adams had a reasonable suspicion to conduct an investigatory stop of the vehicle because he observed a vehicle and passenger that matched the description and location relayed by a citizen informant. The trial court also found the high-risk traffic stop was warranted based upon the officer's training and experience in cases involving vehicle burglary. Further, it also found that Appellee's and his cousin's answers did not alleviate the officer's justifiable concern because neither Appellee nor his cousin knew anyone in the neighborhood, both gave poor explanations for their presence at 2:00 a.m., and their answers were contradictory about whether Appellee had exited the vehicle. Finally, it noted the multi-tool and flashlight were in plain view on the front seat.
Although the trial court ruled the investigatory stop and questioning were lawful, it applied Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485, and ruled that the seizure of the items from the vehicle's passenger compartment was unlawful and subject to suppression. Based on the perceived illegality of the seizure of items within the vehicle's passenger compartment, the trial court concluded that there was not a sufficient temporal break between the illegal search and the consent and search of Appellee's residence. Therefore, the trial court ruled that the subsequent confession, consent, and seizure of evidence from Appellee's residence was tainted and inadmissible. Notwithstanding this ruling, the trial court deemed the officer's actions in executing a protective sweep of the trunk lawful and ruled the seizure of the Dell computer from the trunk was admissible. However, the trial court was not persuaded by Appellee's argument that his rights were violated by the continued use of handcuffs in the patrol car after it was determined he was unarmed. The proceedings were stayed pending appeal.
The State argues on appeal that the trial court erred in applying Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485, and holding the illegal vehicle search tainted Appellee's later consent. Appellee cross-appeals, asserting that he was illegally arrested for a misdemeanor committed outside Adams' presence, which tainted the later admissions, confession and seizure.
The record shows that Appellee failed to demonstrate that he had a legitimate expectation of privacy in the Toyota in which he was a mere passenger. He therefore lacks standing to challenge the items seized therein. See Rakas v. Illinois, 439 U.S. 128, 133, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); State v. Deen, 625 So.2d 968 (Fla. 5th DCA 1993). He does have standing, however, to contest the legality of the investigatory stop and his arrest. See Williams v. State, 640 So.2d 1206, 1209 (Fla. 2d DCA 1994).
Motions to suppress are subject to a mixed standard of review. An appellate court is bound by the trial court's findings of fact that are supported by competent, substantial evidence; however, the application of the law to the facts is subject to de novo review. Pagan v. State, 830 So.2d 792, 806 (Fla.2002). A trial court's determination of reasonable suspicion to conduct an investigatory stop and probable cause to arrest is reviewed de novo. Saturnino-Boudet v. State, 682 So.2d 188, 192 n. 6 (Fla. 3d DCA 1996).
We agree with the trial court's conclusion that the totality of the circumstances warranted Adams' reasonable suspicion *385 that Appellee had attempted to commit burglary of a conveyance, thus warranting an investigatory stop. The reasonable suspicion needed to justify an investigatory stop is a case-specific determination based upon the totality of the circumstances as viewed by an experienced police officer. Id. at 191. Factors to consider in determining whether a reasonable suspicion exists to make an investigatory stop include the time and day, the location, the physical appearance of the suspect, the suspect's behavior, the appearance and manner of operation of any vehicle involved, and anything incongruous or unusual in the situation as interpreted in the light of the officer's knowledge. State v. Quinn, 41 So.3d 1011, 1014 (Fla. 5th DCA 2010). The police officer need not witness criminal activity in order to have a reasonable suspicion that criminal activity occurred or is about to occur. Id. This level of detention permits the officer to conduct a limited search or frisk of the individual for concealed weapons where the officer is justified in believing the person is armed and dangerous to the officer or others. Id. (citations omitted.) Also, the officer may detain the individual even at gunpoint and with handcuffs for the officer's safety without converting the Terry stop into a formal arrest. Id. (citations omitted).
In this case, a resident's 911 call reported a white male, the passenger of a white Toyota, running from car to car checking car doors. The officer found a vehicle and Appellee, located in close proximity to the caller's residence, which matched the description. It was 2:00 a.m. on a weeknight. Courtleigh Drive, a very quiet neighborhood, fit the profile of an ungated community in the Dr. Phillips area that was the focus of law enforcement's efforts to curb the ongoing rash of vehicle burglaries. When first observed minutes later, the Toyota was stopped in the street. The vehicle began to move after Adams shone his spotlight on the vehicle, which he interpreted as an attempt to flee. The investigatory stop was lawful in this case.
The facts underlying the investigatory stop also supported the trial court's finding that Adams' use of a high-risk traffic stop procedure was warranted. Specifically, the resident's report described Appellee's numerous attempts to enter a conveyance stealthily and without the owner's consent, which is prima facie evidence of an attempt to enter with intent to commit an offense. See § 810.07(2), Fla. Stat. (2008). Appellee's actions fit the modus operandi of the persons committing the rash of burglaries in the neighborhood. Adams knew that several firearms had been stolen from the recently burglarized vehicles and, from training and experience, also knew that burglars often carried weapons for protection. These facts gave Adams a reasonable basis to suspect Appellee was attempting to burglarize vehicles and that he might be armed.
Appellee contests Adams' use of handcuffs and contends that their continued use after Adams determined that no weapons were present was illegal and tainted any consent that was the product thereof. Police may properly handcuff a person whom they are temporarily detaining when circumstances reasonably justify the use of such restraint. Reynolds v. State, 592 So.2d 1082, 1085 (Fla.1992). Neither handcuffing nor other restraints will automatically convert a Terry stop into a de facto arrest requiring probable cause. Id. (citing U.S. v. Kapperman, 764 F.2d 786, 790 n. 4 (11th Cir.1985)). "When such restraint is used in the course of an investigative detention, it must be temporary and last no longer than necessary to effectuate the purpose of the stop." Id. Only after Adams returned to the patrol car after sweeping the Toyota did he initiate the questioning that was the purpose *386 of the stop. After the questioning, the purpose for which they were stopped, the officers' reasonable suspicion was elevated to probable cause to arrest Appellee for loitering and prowling and possession of burglary tools. Because the purported illegality of the stop was Appellee's sole ground to suppress statements he made in the patrol car, his statements were untainted and not subject to suppression. Appellee does not assert an independent argument concerning the illegality of the search of his home, which the trial court disapproved based solely on the "fruit of the poisonous tree" doctrine.
Turning to the State's appeal, because we determine the initial stop and the request that Appellee and his cousin exit the Toyota to be valid, he has no standing to challenge the search under Gant or any other theory.[3]See Rakas, 439 U.S. at 148, 99 S.Ct. 421.
Accordingly, we affirm the trial court's denial in part of Appellee's motion to suppress, reverse its ruling granting Appellee's motion to suppress, and remand for further proceedings.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
ORFINGER, C.J., and PALMER, J., concur.
NOTES
[1] Standard practice in a high-risk traffic stop is for two officers to approach the vehicle with guns drawn to make sure there are no passengers hiding in the vehicle or anything in the vehicle that could harm the officers.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Even assuming Appellee had standing to challenge the search, Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), would not require the suppression of evidence in plain view seized from the Toyota. This court has considered and rejected the retroactive application of Gant under the good faith exception. See Brown v. State, 24 So.3d 671, 680 (Fla. 5th DCA 2009); see also Howard v. State, 59 So.3d 229 (Fla. 2d DCA 2011); State v. Harris, 58 So.3d 408, 411 (Fla. 1st DCA 2011) (certifying question: "Does the good-faith exception to the exclusionary rule apply to evidence seized by the police in contravention of [] Gant, [ ]?"), rev. granted, Harris v. State, 61 So.3d 410 (Fla.2011). Further, Gant's second prong permits a search if it is reasonable to believe the vehicle contains evidence of the offense of arrest, in this case, possession of burglary tools, which Adams observed in plain view on the vehicle's passenger seat.