UNITED STATES of America, Appellee,

v.

Richard Clinton VAN DUSEN, Defendant, Appellant.

No. 7580.

United States Court of Appeals, First Circuit.

Oct. 5, 1970.

Howard H. Dana, Jr., Portland, Me., by appointment of the Court, with whom Verrill, Dana, Philbrick, Putnam & Williamson, Portland, Me., was on brief, for defendant-appellant.

Peter Mills, U. S. Atty., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This appeal from a conviction for wilfully causing the interstate transportation of a forged check in violation of 18 U.S.C. § 2314 principally challenges the district court's finding, following a voir dire hearing, that certain statements made to FBI agents by appellant were made with a full understanding of his rights.

Appellant had been held in a New York jail for nearly a month on an unrelated state criminal charge when he was interviewed by two FBI agents. After identifying themselves, the agents handed appellant an "advice of rights" form

which contained two parts. The first, entitled "Your Rights", stated the full *Miranda* warnings. The second portion, entitled "Waiver of Rights", contained a statement to be signed by the person sought to be interrogated to the effect that he understood his rights and was nevertheless willing to answer questions. The agents did not read the form to appellant but testified that a period of some minutes passed during which they observed appellant's eyes move across the page. He refused to sign the waiver, but when asked by the agents, indicated he understood his rights and was willing to talk. He then proceeded to give information which, while implicating himself, identified another as the person who gave him the checks which he signed. At some point in the interview appellant stated that he would "sign papers" when the authorities located this person. The interview lasted less than one hour and no inducements or trickery of any kind were employed by the agents.

Appellant, who denied reading the form, stated to the court that he knew that he had the right to remain silent but also testified that he thought that in the absence of his signature his statements could not be used against him. Nearly five months later, appellant, still in the New York jail, having learned of a warrant for his arrest in the check charge, requested an interview with the FBI. An agent visited him and presented him with the warning form, insisting that the waiver form be signed before any further conversation. Appellant read the form, signed it, and proceeded to talk.

■ Appellant asserts that, faced with a refusal to sign the waiver, the agents should have given the warning orally. We cannot say that as a matter of law such a course of action is required. There was no indication that appellant could not or did not read the form. Appellant had adequate time to read the 22 lines on the form; he appeared to read; he said he understood. To require the agents to read the form aloud in every such situation would seem both to dis-

courage use of a printed form and to mechanize a ritual without necessarily communicating more understanding. In this case, even if appellant is to be believed, an oral presentation of his rights would have added little. He assertedly thought that his signature was a magical key and that, so long as he refused his signature, he could talk with impunity. The only relevant response to such a circumstance would have been a statement disabusing him of this illusion.

■ We think that such an addendum would have been prudent. In the delicate area of advising one of his rights, where testimony is often conflicting, the act of refusing to sign a waiver is concrete and indisputable. When such an act occurs, followed by a willingness to talk, this is a signal of some quirk of reasoning which may simply be a dislike of affixing a signature to any document but which may be more. It may indicate a serious misunderstanding on the part of the accused. In such a succession of events, we wish to make it clear to the courts and prosecutors in this circuit that the burden of persuasion resting on the prosecution measurably increases. It would, we think, be folly to try to cast this principle in the form of a specific required practice. Indeed, were we so to rule, a suspect could, by refusing to sign and subsequently talking freely, enjoy the luxury of an immunity bath at no price at all.

■ It is clear from the *Miranda* decision and its progeny that a *written* waiver of rights is not required. Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Klingler v. United States, 409 F.2d 299, 308 (8th Cir. 1969); United States v. Thompson, 417 F.2d 196, 197 (4th Cir. 1969). The adoption and widespread use of the written waiver form, however, has mutually benefitted the law officer and the accused: the police can more easily meet the "heavy burden" of *Miranda* by producing a signed waiver in court; the accused is given a clear and complete recitation of his constitutional rights as required by court pronouncements. Only a few courts have ever confronted the

problem of a refusal to sign a waiver form and none have adopted a proscriptive code approach which we expressly reject here.

We have encountered this issue before, only peripherally, in Pallotta v. United States, 404 F.2d 1035 (1st Cir. 1968). Although noticing as significant the fact that the defendant had refused to sign a waiver of rights, we did not fully discuss the effect of such a refusal, since, in *Pallotta,* we directed the trial court to first make the preliminary determination on the question of an intelligent waiver, which it had previously failed to do. Appellant cites as a closely analogous case United States v. Bird, 293 F.Supp. 1265 (D.Mont.1968). There are two significant differences. One lies in the facts. In *Bird* the accused had been drinking heavily a few hours earlier, had stated to one interrogator a short time earlier that she did not want to talk, and was almost immediately shown by a successor interrogator a right and waiver form for a two minute interval, which the court felt was inadequate for a person of her background under the circumstances. The more important consideration is that it was the trial judge who so ruled. We do not say that the district judge here could not have similarly ruled. But we cannot take *Bird* as authority for declaring that his opposite ruling was error. *See, e. g.,* Auger v. Swenson, 302 F.Supp. 1131 (D.Mo.1969). We are also aware of the divided opinion in United States v. Nielsen, 392 F.2d 849 (7th Cir. 1968), where the court held it error not to make further inquiry after a refusal to sign, followed by a declaration of the accused that questioning may continue. We observe only that here there was a further, albeit limited, inquiry.

▮ In the case at bar, after reading the entire record, we are satisfied that the burden of persuasion was met. Whatever other problems the appellant had, reading was not one of them. He was twenty-two. He had reached eighth grade level six years earlier. According to a doctor's report, he was of average intelligence but suffered from a high level of anxiety. He had, on an earlier occasion, seen and signed the warning form. He had time enough in which to read. The agents identified themselves and gave him the form with suitable explanation. He apparently read the form. He said he understood. His testimony, on the record, bespoke an articulate and competent person. He told the court that he understood that he could remain silent. He could be understood as feeling that it would help him to show that someone else was more to blame than was he. While this was a mistaken belief, we see no obligation on the investigating agents to tell him so. *Cf.* Kerrigan v. Scafati, 364 F.2d 759, 763 (1st Cir. 1966), cert. denied, 385 U.S. 953, 87 S.Ct. 335, 17 L.Ed.2d 231 (1966).

▮ We see less merit in appellant's other contentions. What we have said above should also indicate that we conclude that the court conformed to the strictures of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 3501 (Supp.1969) (a) and (b). The fact that appellant, when first interviewed by the FBI agents, had been in state custody for a month is not a vital one. This does not present any case of close complicity or tandem interrogation such as that in Westover v. United States, 342 F.2d 684 (9th Cir. 1965), rev'd Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Nor was there any dereliction of duty in the action of the agents in talking to appellant, in the absence of his New York counsel, whose retention was unknown to them. Finally, as to the sufficiency of evidence of wilfulness, we cannot say that a jury should be prevented from inferring that a signer of a check, knowing it was drawn on an out-of-state bank, on the account of an out-of-state company, knowing it was stolen and having participated in a number of other such activities, was aware that he was participating in an interstate transaction. Pereira v. United States, 347 U.S. 1, 9, 74 S.Ct. 358, 98 L.Ed. 435 (1953).

Affirmed.