[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11071
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 4, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00088-CR-FTM-29-DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GURMERCINDO BELTRAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 4, 2010)

Before DUBINA, Chief Judge, EDMONDSON and BIRCH, Circuit Judges.

PER CURIAM:

Appellant Gurmercindo Beltran appeals his convictions and sentences for

possession with intent to distribute a detectable amount of crack cocaine on March 12, 2008, and May 13, 2008, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) ("Counts One and Three"), and possession with intent to distribute a detectable amount of powder cocaine on March 12, 2008, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) ("Count Two"). On appeal, Beltran argues that the district court: (a) erred in denying, in part, his motion to suppress evidence and statements obtained during his 66-minute detention in which he never received *Miranda*[1] warnings, (b) erred in denying his motion for judgment of acquittal on all counts, and (c) abused its discretion by denying his motion to sever Count Three from Counts One and Two at trial. Beltran also appeals the district court's finding that resisting an officer with violence, pursuant to Fla. Stat. § 843.01, was a crime of violence for career offender purposes under U.S.S.G. § 4B1.2(a).

### I. Motion to Suppress

"In reviewing a district court's denial of a motion to suppress, we review its findings of fact for clear error and its application of law to those facts *de novo*." *United States v. Ramirez*, 476 F.3d 1231, 1235 (11th Cir. 2007). All facts are construed in the light most favorable to the prevailing party, in this case the government. *Id.* at 1236. In reviewing a denial of a motion to suppress, we review

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

the entire record, including trial testimony. *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007). We address Beltran's arguments regarding his detention, *Miranda* warnings, and probable cause to arrest separately.

## A. Detention

Pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), we make a two-part inquiry to determine the reasonableness of an investigative stop. *United States v. Acosta*, 363 F.3d 1141, 1144 (11th Cir. 2004). First, we examine whether an officer's action was justified at its inception. *Id.* This analysis "turns on whether the officers had a reasonable suspicion that the defendant had engaged, or was about to engage, in a crime." *Id.* at 1144-45 (internal quotation marks omitted). Second, we determine "whether the stop was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 1145 (internal quotation marks and alterations omitted). The purpose of the second part of the inquiry is to determine "whether the stop went too far and matured into [an] arrest before there was probable cause." *Id.* We have noted the difference "between an investigative stop of limited duration for which reasonable suspicion is enough, and a detention that amounts to an arrest for which probable cause is required." *Id.* at 1145-46.

To distinguish between a *Terry* stop and an arrest, we apply four non-

3

exclusive factors which include: (1) the law enforcement purposes served by the detention; (2) the diligence with which the police pursue the investigation; (3) the scope and intrusiveness of the detention, and (4) the duration of the detention. *Id.* at 1146 (internal quotation marks omitted). As to the first factor, the most important consideration is whether the police detained the defendant to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference. *Id.* (internal quotation marks and alterations omitted). As such, the police may "engage in brief and nonintrusive investigation techniques, such as noncustodial questioning of the detained person." *Id.* (internal quotation marks omitted). As to the second factor, we consider whether the "methods the police used were carried out without unnecessary delay," or in other words, whether each investigatory act logically led to the next act which was done without delay. *Id.* As to the third factor,we examine "whether the scope and intrusiveness of the detention exceeded the amount reasonably needed by police to ensure their personal safety." *Id.* An investigatory stop does not turn into an arrest simply because an officer handcuffs a suspect or secures a suspect in the back of a patrol car. *Id.* at 1147. As to the fourth factor, we have held that there is "no rigid time limitation or bright line rule regarding the permissible duration of a *Terry* stop." *Id.* The test is one of "common sense and ordinary human

4

experience." *Id.* (internal quotation marks omitted). We must consider whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions during the time they detained the defendant. *Id.*

In this case, Beltran does not contest the validity of the initial stop and, thus, we only examine the second part of the *Terry* inquiry. The record supports the district court's finding that the stop was legal. First, the officers detained Beltran because he was the first suspect in a possible burglary in progress. During the first 45 minutes of Beltran's detention, the officers continued to determine whether there was a burglary in progress by making contact with and detaining the other four suspects in the trailer and trying to contact the owner of the trailer, who was in the hospital. During that 45 minute detention, officers found Nora Brooks in the trailer with narcotics and narcotics paraphernalia. She informed officers that Beltran had given her cocaine and that more cocaine was in the vehicle parked in the driveway. During the remaining 21 minutes of Beltran's detention, he was the subject of a narcotics investigation in which the officers requested a K-9 unit to confirm or dispel their suspicions about narcotics in the vehicle. Second, there is nothing in the record to suggest that the officers were less than prompt in carrying out their investigation as to whether there was a burglary in progress and whether there were narcotics violations. Third, under the circumstances, it was reasonable

5

for the officers to handcuff Beltran during his detention. Fourth, based on the totality of the circumstances, Beltran's 66 minute detention was legal. Therefore, we conclude that the district court did not err by denying Beltran's motion to suppress.

## B. *Miranda* Warnings

The right to *Miranda* warnings attaches when custodial interrogation begins. *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006). "A defendant is in custody for the purposes of *Miranda* when there has been a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *Id.* (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983)). Generally, whether a defendant is "in custody" prior to his formal arrest "depends on whether under the totality of the circumstances, a reasonable man in his position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave." *Id.* (internal quotation marks omitted). Because the test is objective, the subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave is irrelevant. *Id.* Although officers may restrain an individual's freedom by placing him in the back of a patrol car, in handcuffs, or by pointing guns at him, that restraint does not automatically turn a stop into an arrest. *United States v. Blackman*, 66 F.3d 1572,

6

1576 (11th Cir. 1995); *United States v. Kapperman*, 764 F.2d 786, 790 & n.4 (11th Cir. 1985). The restraint must be considered under all of the circumstances. *See Blackman*, 66 F.3d at 1576.

In *Acosta*, we gave guidance as to when an officer should issue *Miranda* warnings to a detainee in a *Terry* stop. *See Acosta*, 363 F.3d 1148-49. In determining whether a reasonable person was free to leave a *Terry* stop, we consider whether the *Terry* stop "exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." *Id.* at 1149 (internal quotation marks omitted).

In this case, Beltran was not in custody when: (a) Corporal Marotta asked what was in Beltran's front pocket and Beltran responded that it was car keys; (b) Marotta asked whose car was in the driveway and Beltran responded that it was his sister's; and (c) Corporal Partin asked whether the vehicle was Beltran's and whether he had the keys and Beltran responded that it was his sister's car and that he had the keys. During these questions, Beltran was handcuffed due to the burglary investigation. However, there were no significant pressures during these questions that would have sufficiently impaired his ability to exercise his privilege against self-incrimination. Therefore, we conclude that the district court did not err

7

when it denied Beltran's motion to suppress.

## C. Probable Cause to Arrest

Law enforcement officers have probable cause to arrest when the facts and circumstances within their collective knowledge, "or of which they have reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed or is committing an offense." *Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997).

Here, we conclude from the record that the officers had probable cause to arrest Beltran because the officers found Brooks with cocaine, Brooks had stated that Beltran gave her the cocaine, and that more cocaine was located in the car in the driveway. Additionally, Beltran stated that he possessed the car keys to the car in the driveway and that the car was his sister's.

## II. Motion for Judgment of Acquittal

We review the denial of a motion for judgment of acquittal *de novo*. *United States v. Evans*, 473 F.3d 1115, 1118 (11th Cir. 2006). "When the motion raises a challenge to the sufficiency of the evidence, we review the sufficiency of the evidence *de novo*, drawing all reasonable inferences in the government's favor." *Id.* (internal quotation marks omitted). In reviewing the denial of a motion for acquittal, we determine "whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Eckhardt*, 466 F.3d 938, 944 (11th Cir. 2006) (internal quotation marks omitted). "The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." *United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir. 1989).

To support a conviction for possession with intent to distribute, pursuant to 21 U.S.C. § 841(a)(1), the government must prove: (1) knowing; (2) possession of a controlled substance; (3) with intent to distribute it. *United States v. Farris*, 77 F.3d 391, 393, 395 (11th Cir. 1996). The government can prove all three elements by either direct or circumstantial evidence. *Poole*, 878 F.2d at 1391-92. "Evidence of surrounding circumstances can prove knowledge." *Id.* at 1392. "Constructive possession is sufficient for the possession element, and can be established by showing ownership or dominion and control over the drugs or over the premises on which the drugs are concealed." *Id*. "Intent to distribute can be proven circumstantially from, among other things, the quantity of cocaine and the existence of implements such as scales commonly used in connection with the distribution of cocaine." *Id.*

Here, the evidence supports convictions for all three counts. As to Counts One and Two, the evidence sufficiently demonstrates that Beltran constructively possessed the crack and powder cocaine located in the locked glove box of a car to which he had the keys. Moreover, he had knowledge of the drugs located within the glove box. Additionally, the evidence sufficiently demonstrates that Beltran was a crack dealer who had distributed crack to the trailer occupants. Based on the fact that Beltran was a crack dealer, a rational trier of fact could have found that Beltran also intended to distribute powder cocaine. As to Count Three, the evidence sufficiently demonstrates that Beltran intended to distribute the amount of crack cocaine in his possession based on the quantity of the drugs, the packaging of the drugs, and the large amount of cash in his possession. Therefore, we conclude that the district court did not err by denying Beltran's motion for judgment of acquittal on all three counts.

### III. Motion to Sever

We apply a two-step analysis to determine whether the district court properly tried separate charges at the same time. *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002). " First, we review *de novo* whether the initial joinder of charges was proper under [Federal Rule of Criminal Procedure] 8(a)". *Id.* "Second, we determine whether the district court abused its discretion under

[Federal Rule of Criminal Procedure] 14 by denying a motion to sever." *Id.*

Pursuant to Rule 8(a), the indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed.R.Crim.P. 8(a).  We construe Rule 8(a) broadly in favor of initial joinder and permit "joinder of offenses that 'are of the same or similar character,' even if such offenses do not arise at the same time or out of the same series of acts or transactions." *Hersh*, 297 F.3d at 1241(quoting Fed.R.Crim.P 8(a)).  The district court must determine the propriety of initial joinder before trial by examining the allegations on the face of the indictment.  *United States v. Weaver*, 905 F.2d 1466, 1476 (11th Cir. 1990) (Fed.R.Crim.P. 8(b)); *see United States v. Dominguez*, 226 F.3d 1235, 1239 n.4 (11th Cir. 2000) (finding, for present purposes, that the governing principles for Fed.R.Crim.P. 8(a) and (b) are the same).  Crimes of "similar character" mean "[n]early corresponding;  resembling in many respects;  somewhat alike; having a general likeness." *Hersh*, 297 F.3d at 1241 (internal quotation marks omitted).  Additionally, the offense only need to be similar in "category, *not* in evidence." *Id.*

Pursuant to Rule 14(a), if the joinder of the offenses in an indictment for trial "appears to prejudice a defendant . . . , the court may order separate trials of

11

counts, . . . or provide any other relief that justice requires." Fed.R.Crim.P. 14(a).

The defendant must show "more than some prejudice," he must demonstrate that

"he received an unfair trial and suffered compelling prejudice." *United States v.*

*Walser*, 3 F.3d 380, 386 (11th Cir. 1993) (internal quotation marks omitted). "This

is a heavy burden, and one which mere conclusory allegations cannot carry." *Id*.

(internal quotation marks omitted). "The test for assessing compelling prejudice is

whether under all the circumstances of a particular case it is within the capacity of

jurors to follow a court's limiting instructions and appraise the independent

evidence against a defendant solely on that defendant's own acts, statements, and

conduct in relation to the allegations contained in the indictment and render a fair

and impartial verdict." *Id.* at 386-87. Severance is not required when the possible

prejudice may be cured through a cautionary instruction. *Id.* at 387. Absent

evidence to the contrary, we presume that a jury was able to follow the district

court's "instructions and evaluate the evidence" on each count independently. *See*

*id.*

Here, we conclude that the district court did not err in the initial joinder of

the three counts because a review of the indictment demonstrates that Counts One

and Three both involved possession with intent to distribute crack cocaine.

Moreover, we conclude that the district court did not abuse its discretion by

denying Beltran's motion to sever because Beltran did not argue or demonstrate that the jury was unable to follow the district court's limiting instruction that the jury must evaluate the evidence for each count separately.

## IV. Career Offender

We review the district court's legal interpretation of the statutes and sentencing guidelines *de novo*. *United States v. Burge*, 407 F.3d 1183, 1186 (11th Cir. 2005).

Under U.S.S.G. § 4B1.1, a defendant qualifies as a career offender if he has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a)(3). A "crime of violence" is any offense under federal or state law, punishable by a term of imprisonment exceeding one year, that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a)(1)-(2).

To determine whether a crime is a "crime of violence," we use the categorical approach and, thus, only consider "the offense as defined by the law, rather than considering the facts of the specific violation." *United States v. Archer*,

531 F.3d 1347, 1350 (11th Cir. 2008).

Under Florida Statute § 843.01, it is a felony to "knowingly and willfully" resist, obstruct, or oppose "any officer . . . in the lawful execution of any legal duty, by offering or doing violence to the person of such officer." Fla. Stat. § 843.01 (2002). In *In re Standard Jury Instructions in Criminal Cases*, 996 So.2d 851 (Fla. 2008), the Florida Supreme Court authorized lower courts to define "offering to do violence" as "threatening to do violence" in Florida's standard criminal jury instructions for this statutory provision. *Id.* at 852.

In this case, Florida Statute § 843.01 is a "crime of violence" within the meaning of U.S.S.G. § 4B1.2(a)(1) because it has the elements of using or threatening to use physical force against the person of another. Therefore, we conclude that the district court did not err by classifying Beltran as a career offender because a conviction under Florida Statute § 843.01 is a qualifying offense.

For the above-stated reasons, we affirm Beltran's convictions and sentences.

**AFFIRMED**.

14